IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

W.F.P., *a minor, by and through her*
*natural mother and Next Friend, Alyssa*
*Jordan Pierce*,
MATHEW DAVID PIERCE, and
ALYSSA JORDAN PIERCE,

                 Plaintiffs,

v.                                         No. 16-2799-JWB

THE BUCKLE, INC., and
MIDWEST CUSTOM CASE, INC.,

                 Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on motions for partial summary judgment by The Buckle Inc. and Midwest Custom Case, Inc. (Docs. 43, 47.) The motions are ripe for decision. (Docs. 44, 45, 46, 48.[1]) Defendants' motions are GRANTED for the reasons stated herein.

### I. Facts

The court finds the following facts to be uncontroverted for purposes of summary judgment.

Plaintiff W.F.P. is the minor child of Plaintiffs Mathew and Alyssa Pierce. W.F.P. alleges she was an invitee at The Buckle retail store on November 16, 2016, and that she sustained injuries when a dangerous multi-level textile display tipped over and crashed down upon her. W.F.P. was accompanied by her mother, Alyssa, during her visit to The Buckle. (Doc. 45 at 1-2.)

---

[1] By stipulation of the parties, The Buckle Inc.'s motion is deemed a joint motion on behalf of both Defendants, and Plaintiffs' Response is deemed applicable to both Defendants. (Doc. 48.)

On the day of the occurrence, Alyssa had picked up W.F.P. from her husband, Mathew, and took W.F.P. shopping with her inside the Oak Park Shopping Mall, so that Mathew could go to work. Mathew was not present at The Buckle on November 10, 2016, was not directly injured himself, and neither witnessed nor perceived the occurrence causing injury to W.F.P. (*Id*. at 2.)

Alyssa was not physically injured herself and did not see the display fall on W.F.P. Alyssa was three or four feet away from W.F.P. at the time of the accident. Alyssa heard something behind her and saw the store manager, Scott Marconnet, "jolt." Alyssa quickly turned around and saw part of a table on top of W.F.P., with one of the sides of it on the child's face. W.F.P. was on her stomach, with her face flat on the ground, facing the cash register. Alyssa picked W.F.P. up and noticed she wasn't crying but was starting to pass out. Alyssa also noticed W.F.P.'s left leg was instantly swelling, so she pulled W.F.P.'s jeans down, at which point the child started to pass out again. Alyssa cradled W.F.P. in her arms and took her to the back of the store so she could lay her down on a table. The child "came to" and started crying. Alyssa then asked someone to call 911. (Doc. 45 at 3-4.)

Alyssa's back was to the display at the time of the accident and she did not see W.F.P. fall. She did not see what W.F.P. was doing in the moments before the display ended up on top of the child. The child later told Alyssa that she had "grabbed on to that pole," indicating a pole supporting one of the display's tiers. (Doc. 45 at 5.)

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's

2

favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Summary of Arguments

Plaintiffs' Amended Complaint alleges that W.F.P. suffered a fractured femur and other injuries from the incident. Count I alleges a claim on behalf of W.F.P. for personal injuries allegedly caused by The Buckle's negligence. Count II alleges a claim by Alyssa and Mathew Pierce against The Buckle for loss of W.F.P.'s services and companionship, medical bills incurred for W.F.P.'s treatment, and mental and emotional suffering as a result of W.F.P.'s injuries. Count III alleges a claim on behalf of W.F.P. against Midwest Custom Case for injuries caused by a defective or dangerous product. Count IV alleges a claim by Alyssa and Mathew Pierce against Midwest Custom Care for the damages listed in Count II. (Doc. 34.)

Defendants contend they are entitled to judgment as a matter of law on Counts II and IV to the extent these counts seek damages for loss of consortium and emotional distress.[2] Insofar as Alyssa and Mathew Pierce seek damages for loss of the services and companionship of W.F.P., Defendants point out that Kansas has refused to allow minor children to assert "parent/child consortium" claims arising from injuries to their parents or caretakers, and argue by analogy that

---

[2] Defendants do not seek summary judgment on the parents' claim for medical expense damages. (Doc. 44 at 3.)

Kansas would not allow a parent to recover for the loss of companionship of an injured child. (Doc. 44 at 5-7.) As for the claim by Alyssa and Mathew for emotional pain and suffering, Defendants argue Kansas rejects such claims where the parent "is not present at the scene, is not directly injured, and neither witnesses nor perceives the occurrence causing injury to the child." (*Id*. at 7) (quoting *Smelko By & Through Smelko v. Brinton*, 241 Kan. 763, 773, 740 P.2d 591, 598 (1987)). Defendants contend neither parent meets this standard.

In response, Plaintiffs contend the court should recognize their claim for loss of consortium. They point out that Defendants cite "no Kansas cases holding that a father and mother do not have a claim for loss of services arising out of an injury to their child," and argue the court should allow the claim because Section 18 of the Bill of Rights to the Kansas Constitution guarantees a remedy to all injured persons. (Doc. 45 at 9.) As for damages for pain and suffering, Plaintiffs argue Alyssa meets the Kansas standard because she was present and perceived the occurrence causing injury to W.F.P. They concede Mathew does not satisfy that standard, but again argue the Kansas Constitution guarantees him a remedy. (Doc. 45 at 11.)

**IV. Discussion**

A. *Parent/child Consortium Claim*

The substantive law of Kansas governs this diversity action. *See Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014) (in diversity actions, federal court applies substantive law of the forum state). After reviewing Kansas law, the court concludes Kansas would not allow Plaintiffs to claim damages for loss of consortium arising from an injury to their child. The Kansas Legislature specifically authorizes a claim for loss of consortium when a married person is injured. *See* K.S.A. § 23-205. There is no comparable provision for injury to either a parent or a child. In *Hoffman v. Dautel*, 189 Kan. 165, 368 P.2d 57 (1962), the Kansas Supreme

4

Court refused to allow a minor child to claim loss of consortium arising from an injury to the child's father. In *Klaus v. Fox Valley Systems, Inc.*, 259 Kan. 522, 912 P.2d 703 (1996), the Supreme Court reaffirmed that holding, finding circumstances had not changed materially in the 33 years since *Hoffman* was decided, and noting the Kansas Legislature had chosen not to amend the statute to allow such a claim. The court thus reiterated: "We hold that Kansas does not recognize that minor children have a cause of action against a tortfeasor for direct negligence injury to their parent, resulting in an indirect injury to them for loss of parental care and society." *Id.* at 531, 912 P.2d at 708.

While the Kansas Supreme Court has not expressly addressed the reverse situation – i.e., whether *a parent* can claim loss of consortium damages from an injury to *a child* - *Hoffman* and *Klaus* mandate a prediction that the court would not recognize such a claim. *Cf. Johnson v. Riddle*, 305 F.3d 1107, 1108 (10th Cir. 2002) (in applying state law, federal court must look to rulings of the highest state court and, if no such rulings exist, predict how that court would rule). *Hoffman* recognized that "when the child-parent relationship is impaired … the child is deprived of something that is indeed valuable and precious," yet it warned that courts "should proceed with caution in laying down a new rule" that would open a new field of litigation and possibly lead to multiple actions and duplication of damages. *Id.* at 169, 368 P.2d at 59-60. In *Klaus*, the court similarly warned that creation of a new cause of action in this field was a matter of legislative judgment. *See Klaus*, 259 Kan. at 530, 912 P.2d at 707 (emphasizing that "[d]eference to the legislature is warranted by the complexities that would arise in Kansas from recognizing a cause of action for loss of parental consortium");*see also Schmeck v. City of Shawnee*, 231 Kan. 588, 647 P.2d 1263 (1982) (declining to allow parent to recover damages resulting from injury to adult daughter). The same rationale applies equally when it is the parent, rather than the child, claiming

5

damages from a loss of society or companionship. These cases indicate the Kansas Supreme Court would not recognize a claim for loss of consortium by Alyssa and Mathew Pierce arising from the injury to W.F.P. Defendants are accordingly entitled to judgment as a matter of law insofar as Counts II and IV seek damages for loss of W.F.P.'s services and companionship.

B. *Emotional Distress Damages*

Alyssa and Mathew also seek damages for the emotional distress they suffered as a result of their child's injuries. In addressing this claim, both sides cite the Kansas Supreme Court's holding in *Schmeck* that "a parent has no cause of action for his or her emotional, physical, or other injuries against one who negligently causes injury to an adult child, when the parent is not present at the scene, is not directly injured, and neither witnesses nor perceives the occurrence causing injury to the child." *Id*. at 594, 647 P.2d at 1267. The parties appear to agree that Kansas would allow a claim for emotional distress damages if the factual scenarios listed in *Schmeck* were present.

A few years after *Schmeck*, the Kansas Supreme Court said the foregoing rule "has equal application where the parents of a minor child claim damages for their emotional distress under like circumstances." *Smelko*, 241 Kan. at 773, 740 P.2d at 598. Later still, in *Arche v. U.S. Dept. of Army*, 247 Kan. 276, 798 P.2d 477 (1990), the court said "[t]he rule in Kansas is that plaintiffs can sustain a cause of action for negligent infliction of emotional distress caused by the injuries of a third party only if they were witnesses to the occurrence which caused the injury." *Id.* at 283, 798 P.2d at 482 (citing *Smelko* and *Schmeck*, supra). The court further noted, "We have thus far held that visibility of results as opposed to visibility of the tortious act does not give rise to a claim for emotional damages." *Id*.

Based on the cases quoted above, the Kansas Supreme Court would likely recognize a claim for emotional distress under the standards in *Schmeck*, although it has not in fact allowed any such claim to date. In the cases it has decided, the Kansas Supreme Court has drawn a bright line between witnessing the tortious act that causes an injury and witnessing the resulting injury. Thus, in *Schmeck* the mother who learned of her daughter's injury and saw her about an hour after an accident had no claim for emotional distress. *Id.* In *Smelko*, the parents were waiting just outside an operating room and saw their infant child shortly after he underwent surgery. They heard and witnessed his screams in the recovery room, where they tried to comfort him. No one realized at the time that the child had been burned during surgery by a heating pad. The court found the parents had no claim for emotional distress, saying that even if they had been in the operating room, it "is unlikely they would have realized that the injury was taking place...." *Smelko*, 241 Kan. at 773, 740 P.2d at 598. The court also noted that California law (which was cited in *Schmeck*) "has rejected a claim that the visibility of the results, rather than the visibility of the tortious act, is the essential element," and requires "that the tortious act must be susceptible of understanding observance by the plaintiff." *Id.* at 773-74 (citation omitted).

In *Anderson v. Scheffler*, 242 Kan. 857, 752 P.2d 667 (1988), the court rejected a claim for emotional distress by a man who had been working with his brother when the brother fell into a grain auger. The plaintiff did not witness the accident but heard his brother's screams and ran over to find him bleeding profusely at the point where his leg had been amputated by the auger. *Id.* at 858, 752 P.2d at 668. Although the plaintiff "was immediately on the scene and saw the gruesome consequences," he suffered no physical injury himself and had no claim for emotional distress under Kansas law. *Id.* at 860, 752 P.2d at 669.

Alyssa Pierce was present during the accident and heard something when it occurred. She immediately saw the consequences of the injury to her child, but she did not see the incident as the injury occurred. To date the Kansas Supreme Court has never allowed a claim for emotional distress to proceed where the plaintiff failed to witness the actual event that caused the underlying injury. Alternatively, to the extent that the facts of this case might be materially distinguishable from the cited cases, thereby obligating this court to engage in the legal alchemy of predicting how the Kansas Supreme Court would rule, *Johnson*, 305 F.3d at 1108 (in applying state law, federal court must look to rulings of the highest state court and, if no such rulings exist, predict how that court would rule), the court reaches the same conclusion. Given the trajectory of the cases cited herein, it is difficult to imagine that the Kansas Supreme Court would stray far from *Arche*'s conclusion that "visibility of results as opposed to visibility of the tortious act does not give rise to a claim for emotional damages." *Arche*, 247 Kan. at 283, 798 P.2d at 482. Given this binding case law, the court is obligated to predict that the Kansas Supreme Court would hold that Alyssa cannot recover for emotional distress because she witnessed the results of the allegedly tortious act, but she did not witness or have "visibility of the tortious act" that caused the injury.

Because Kansas law does not allow a claim for emotional distress in these circumstances, Defendants are entitled to judgment as a matter of law on Alyssa's claim for emotional distress damages. The *Schmeck* standard also entitles Defendants to summary judgment on Mathew's claim for emotional distress, as he was not present and did not witness the accident. Plaintiffs' argument that such a claim must be recognized due to Section 18 of the Kansas Bill of Rights was specifically rejected by the Kansas Supreme Court in *Schmeck*, and is accordingly unavailing here. *Schmeck*, 231 Kan. at 594, 647 P.2d at 1267.

**V. Conclusion**

Defendants' Motions for Partial Summary Judgment (Docs. 43, 47) are GRANTED. IT IS

SO ORDERED this 13th day of June, 2018, at Wichita, Ks.


___s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE